IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| MOLLY LOU BRYANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 115-005 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Molly Lou Bryant ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

## I.    BACKGROUND

Plaintiff, a fifty-seven year-old with a high school education and past work experience as a custodian, protectively applied for DIB on February 7, 2011, alleging a disability onset date of May 8, 2008. Tr. ("R."), pp., 565, 635. The Social Security Administration denied Plaintiff's application initially, R. at 580-83 and on reconsideration,

R. at 583-87.  Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. at 588-89, and the ALJ held a hearing on October 30, 2012.  R. at 500-25.  At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and Otis Peterson, a Vocational Expert ("VE").  Id.  On December 12, 2012, the ALJ issued an unfavorable decision.  R. at 483-492.

Applying the five-step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1.  The claimant has not engaged in substantial gainful activity since May 10, 2008, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*).

2.  The claimant has the following severe impairments: thrombotic thrombocytopenic purpura (TTP), sarcoidosis, degenerative joint disease of the left shoulder, asthma, morbid obesity (20 C.F.R. §§ 404.1520(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. 404.1567(c)[1] except: she can frequently climb ramps and stairs; she can never climb ladders, ropes, or scaffolds; she can frequently balance and stoop; she can never kneel, crouch, or crawl; she should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.

5.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant

---

[1] As defined in 20 C.F.R. § 404.1567, medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work.

numbers in the national economy that the claimant can perform (20 CFR §§ 404.1569, 404.1569(a)).

R. at 486-91.

When the Appeals Council denied Plaintiff's request for review, R. at 2-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal. Plaintiff argues the decision is not supported by substantial evidence because the ALJ: (1) omitted Plaintiff's obesity from her RFC; (2) failed to consider all of Plaintiff's subjective complaints of pain; (3) failed to consider all of Plaintiff's nonexertional impairments; (4) ignored contrary evidence supporting Plaintiff's disability; (5) erred in not determining that Plaintiff was disabled for at least a twelve-month closed period; (6) erred in not including a state agency medical consultant's evaluation that limited Plaintiff to occasional balancing; and (7) erred in discrediting the state agency medical consultant's opinion limiting Plaintiff to light work. (See doc. no. 15 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should therefore be affirmed. (See doc. no. 16 (hereinafter "Comm'r's Br.").)

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the

Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. <u>Cornelius</u>, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. <u>Barron v. Sullivan</u>, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting <u>Bloodsworth</u>, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. <u>Id.</u> Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. <u>McCruter v. Bowen</u>, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails

either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.  DISCUSSION

### A.  The ALJ Properly Considered Plaintiff's Obesity in Formulating Plaintiff's RFC.

Plaintiff argues the ALJ only summarized the regulations covering obesity and never mentioned Plaintiff's obesity when addressing Plaintiff's RFC. (Pl.'s Br., pp. 4-5.) Plaintiff also argues the ALJ erred in formulating an RFC without a physical capacities evaluation from the consultative examiner. (Id. at 5.)

In making an RFC determination, the ALJ is charged with the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. See Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). Furthermore, an ALJ does not adopt the opinion of any one medical source, but considers the totality of the evidence in arriving at a conclusion on the ultimate question of disability. See 20 C.F.R. §§ 404.1527(b), (c); 416.927(b), (c); Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (reasoning that prior inconsistent treatment notes and Claimant's daily activities supported ALJ's decision to reject functional capacities evaluation by treating physician). An ALJ's decision also need not address every limitation included in a physician's report as long as the written decision is clear that the ALJ considered both the physician's opinion and the plaintiff's condition as a whole. See Adams v. Comm'r, Soc. Sec. Admin., 586 F. App'x 531, 534 (11th Cir. 2014).

As pointed out by the ALJ, SSR 02-1p establishes that obesity must be considered in determining a claimant's residual functional capacity. R. at 485. SSR 02-1p further explains that "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." Id. Here, the ALJ summarized the requirements under SSR 02-1p, found Plaintiff's morbid obesity to be a severe impairment, but did not explicitly discuss Plaintiff's obesity in the section formulating Plaintiff's RFC.

The ALJ's formulation of Plaintiff's RFC involved an extensive review of Plaintiff's lengthy medical records and considered Plaintiff's own testimony as to her specific functional limitations. The ALJ remarked that the majority of her medical records, consisting of over 2,000 pages, were related to visits for treatment of her TTP, a serious condition that causes blood clots in small blood vessels throughout the body and requires plasma therapy. See What is Thrombotic Thrombocytopenic Purpura?, National Heart, Lung, and Blood Institute, https://www.nhlbi.nih.gov/health/health-topics/topics/ttp. The ALJ reviewed the medical records related to her sarcoidosis, asthma, and left shoulder pain. R. at 488. The ALJ also summarized Plaintiff's testimony that she could not work because of asthma, hypertension, anemia, and GERD which caused shortness of breath, asthma attacks two to three times a year, and bruising on her legs. R. 487-88. Plaintiff testified she had no problem sitting, she could only stand for an hour at a time, she could only walk short distances, and she could not lift more than twenty pounds. R. at 488.

The ALJ included within this review an apt summary of a consultative examination

performed by Dr. Frederick House on April 21, 2011. R. at 1021-27. Dr. House noted a normal range of motion in Plaintiff's joints, including her left shoulder, and normal strength in all extremities. Id. This report also noted Plaintiff's height, weight, and body mass index, which indicated Plaintiff was obese. R. at 1022. The ALJ found this report supported his conclusion as to claimant's ability to work, commenting that the examination was largely unremarkable. R. at 490-91.

The ALJ extensively reviewed the evidence, made a clear assessment as to Plaintiff's impairments, supported his credibility finding with direct citations to the record, and considered Plaintiff's condition as a whole. See Adams, 586 F. App'x at 534. The ALJ's failure to explicitly mention obesity under the section addressing Plaintiff's RFC does not render the opinion unsupported by substantial evidence. See Castel v. Comm'r of Soc. Sec., 355 F. App'x 260, 264 (11th Cir. 2009) (finding ALJ properly considered plaintiff's obesity where ALJ referenced SSR 02-1p, determined it was a severe impairment, and decision reflected it did not cause any specific functional limitations). Here, the ALJ explicitly mentioned SSR 02-1p, found obesity to be a severe impairment, and gave considerable weight to a consultative examination that specifically mentioned Plaintiff's BMI but resulted in no remarkable findings. Further, the ALJ stated in his opinion that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence . . . ." R. at 487.

Even if the ALJ's failure to explicitly mention obesity at step four is error, that error was harmless. Wilson v. Comm'r of Soc. Sec., 500 F. App'x 857, 860 (11th Cir. 2012)

(applying harmless error doctrine to an ALJ's decision).  Plaintiff did not testify she was impaired due to obesity or put forward any specific functional limitations caused by her obesity at the hearing.  R. at 504, 508-14.  Nor did Plaintiff indicate obesity was a condition that caused her to be disabled or limited her ability to work on her application for disability.  R. at 648; See Street v. Barnhart, 133 F. App'x 621, 627 (11th Cir. 2005) ("[A]dministrative law judge is under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'")(quoting Pena v. Chater, 76 F. 3d 906, 909 (8th Cir. 1996)).  Thus, Plaintiff failed to present any evidence of any specific functional limitations caused by her obesity not already considered and discussed by the ALJ, such as her left shoulder pain or shortness of breath.

Because Plaintiff's obesity did not cause any additional functional limitations outside of the limitations specifically found by the ALJ, the ALJ's failure to explicitly mention Plaintiff's obesity within the RFC section of his opinion, if it was error at all, was harmless.

Plaintiff also argues the ALJ's RFC is not supported by substantial evidence because Dr. House did not complete a physical capacities evaluation, citing an unpublished case out of the Northern District of Alabama.  (Pl.'s Br., p. 4.)  However, a published opinion from the same court has found that an RFC from a medical source is not required because such a finding is not a medical assessment but rather an issue reserved for the Commissioner.  Langley v. Astrue, 777 F. Supp. 2d 1250, 1258 (N.D. Ala. 2011).  The Eleventh Circuit has also held that a medical assessment from a physician is not required in order for the ALJ to make a finding as to Plaintiff's RFC.  See Green v. Soc. Sec. Admin., 223 F. App'x 915, 923

(11th Cir. 2007) (rejecting argument RFC was unsupported by substantial evidence after ALJ discredited treating physician's physical capacities evaluation); <u>Castle v. Colvin</u>, 557 F. App'x 849, 854 (11th Cir. 2014) (holding ALJ can interpret raw data in formulating RFC where Plaintiff's complications are straightforward). Thus, the ALJ did not err in relying on Dr. House's opinion in formulating Plaintiff's RFC.

**B.    The ALJ's Credibility Determination is Supported by Substantial Evidence.**

Plaintiff argues the ALJ failed to consider all of Plaintiff's subjective complaints of disabling pain because he did not explicitly reference various complaints, such as neck pain, headaches, back pain, and chest pain, found in the medical record but not mentioned by Plaintiff in her testimony. (Pl.'s Br., pp. 5-11.)

Under the Eleventh Circuit's three-part standard for evaluating a claimant's subjective complaints, a plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991); <u>see also</u> <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1225 (11th Cir. 2002). When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." <u>Foote v. Chater</u>, 67 F.3d 1553, 1561-62 (11th Cir. 1995); <u>see also</u> <u>Strickland v. Comm'r of Soc. Sec.</u>, 516 F. App'x 829, 832 (11th Cir. 2013).

"Credibility determinations are, of course, for the [Commissioner], not the courts."

Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980). As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted).

Contrary to Plaintiff's assertions, the ALJ is not obligated to dig up every subjective complaint of pain made by Plaintiff from the medical record and explicitly mention it in his decision. The types of pain listed in Plaintiff 's brief are found nowhere in Plaintiff's testimony nor mentioned in Plaintiff's application for benefits. R. at 648; See Street, 133 F. App'x at 627 (11th Cir. 2005). Further, the ALJ noted the various medical records cited by Plaintiff but remarked that she "had several emergency room visits for treatment of a variety of short-term, acute ailments that have not caused the claimant to have long-term impairments." R. at 488. Plaintiff offers nothing to rebut the finding by the ALJ that the various ailments she references were only acute, rather choosing to summarize the medical records which she feels the ALJ did not adequately address. (See Pl.'s Br. at 8.)

For example, Plaintiff offers her chest pain as a condition the ALJ failed to address.

10

(Pl.'s Br. , p. 9.)  Plaintiff cites three medical records over a four-year period, a period that generated thousands of pages of medical records, which noted Plaintiff had chest pain.  (Id.) Plaintiff ignores the other various visits by Plaintiff to the hospital where chest pain was never mentioned.  Further, Plaintiff's failure to testify as to any symptoms of chest pain gave the ALJ further reason to find this was only an acute ailment not causing any more than minimal limitations to her functional abilities.

This also rings true for Plaintiff's back pain.  Plaintiff cites three different records where she complains of back pain but fails to acknowledge that each visit to the emergency room involved a revolving door of different complaints, with rarely two complaints showing up consecutively, save complaints of shortness of breath which the ALJ did explicitly address.  R. at 2554, 2681, 2839, 2825, 2771, 2811, 2726.  Plaintiff failed to testify as to any symptoms of back pain at the hearing and a record on May 16, 2011 specifically notes that Plaintiff had no back pain.  R. at 1454.

Plaintiff's claim that neck pain should have been explicitly referenced in the ALJ's opinion fails for similar reasons.  Plaintiff concedes the neck pain was related to her plasmapheresis catheters and was noted to be stabled for several years on May 16, 2011.  R. at 1454.  This ailment is also mentioned in only four visits among a legion, and Plaintiff's plasmapheresis treatments ceased in September of 2010.  R. at 489.  This was also not testified to or noted in Plaintiff's disability application.

Plaintiff also contends that her leg pain was not considered by the ALJ, despite the ALJ specifically mentioning Plaintiff's testimony as to her leg bruising and inability to walk

more than short distances. (Pl.'s Br., p. 10.) The ALJ found Plaintiff to be only partially credible as to her subjective symptoms because her allegations were not supported by her treatment records, her TTP and sarcoidosis were in remission, and Dr. House's examination was largely unremarkable. R. at 490. Here, the ALJ gave specific reasons for discrediting Plaintiff's complaints of leg bruising and pain. Eleventh Circuit law only requires an explicit finding on the credibility of Plaintiff's testimony, not an explicit reference to every subjective complaint of pain in the record. See Foote, 67 F.3d at 1562. In specifically mentioning Plaintiff's testimony as to her legs and later discrediting the complaints with cogent reasons, the ALJ supported his credibility determination with substantial evidence.

In sum, Plaintiff's argument that the ALJ failed to consider all of her subjective symptoms is without merit. Plaintiff failed to list neck pain, chest pain, or back pain as a basis for disability on her application and failed to testify as to any limitations caused by these alleged symptoms. Given this lack of testimony, the ALJ was under no obligation to explicitly reference these symptoms or consider them in his opinion, and this omission gave further support to the ALJ's conclusion these impairments were simply acute ailments affecting Plaintiff on an intermittent basis at best. R. at 488. As to Plaintiff's leg pain, the ALJ explicitly referenced this symptom in his opinion and articulated reasons for discrediting it. Accordingly, the ALJ's credibility determination is supported by substantial evidence.

**C.     The ALJ Considered Plaintiff's Non-Exertional Impairments, and the Hypothetical to the VE Comprehensively Described Plaintiff's Credible Impairments.**

Plaintiff, in her third count of error, contends the ALJ did not adequately address

Plaintiff's non-exertional impairments of fatigue, headaches, and shortness of breath, failed to include them in Plaintiff's RFC, and thereby committed error by posing a hypothetical to the VE that did not include all of Plaintiff's impairments. (Pl.'s Br., p. 11.)

Similar to her other subjective complaints of pain, discussed *supra* § III.B, Plaintiff's headaches and fatigue were not alleged as a basis for disability in her application or at the hearing. The ALJ and Plaintiff's attorney at the administrative level had the following illustrative exchange:

> ALJ: Okay. All right. These are the impairments that I come up with Mr. Davis. You can tell me if I may have missed something. Sarcoidosis, asthma, thrombocytopenia, decreased vision, hypertension, anemia, GERD, and degenerative joint disease of the left shoulder. Any other impairments?
>
> ATTY: Nothing, your honor.

R. at 504. The only references to headaches by Plaintiff was in regard to her symptoms at work in 2008 before retiring, and the following exchange:

> Q: Do you have any other symptoms related to TTP?
>
> A: Had headaches. That's why I just kind of wait, I try to make sure. Because every time I go to the emergency room with the disease, I got to make sure . . . .

R. at 516, 520. Plaintiff did not testify as to any specific functional limitations caused by her headaches, fatigue, or shortness of breath outside of the limitations referenced by the ALJ. See R. at 500-25. As to medications she was taking, Plaintiff mentioned only Advil, Albuterol, and Zantac. R. at 508, 511.

The record shows the ALJ properly considered Plaintiff's headaches and fatigue

where these were shown to be largely a symptom of TTP. The ALJ noted Plaintiff had multiple relapses due to her TTP but was in sustained hematological remission since July 2010. R. at 490. A medical record from April 20, 2012 showed Plaintiff had occasional headaches that have lessened in severity since Plaintiff received eyeglasses and were relieved by acetaminophen. R. at 2839. This same note was made in a visit on June 25, 2012. R. at 2825.

Plaintiff's fatigue was also associated with her TTP and was not discussed by Plaintiff at the hearing outside of the functional limitations addressed by the ALJ. R. at 789. The only other report of fatigue, outside of the periods related to her TTP, occurred in November of 2010. R. at 2932. Thus, the record is clear Plaintiff's headaches and fatigue were only intermittent after her TTP went into remission, and her headaches were effectively treated with over the counter medication. Given the minimal functional limitations, if any at all, these conditions imposed, the ALJ did not err in failing to specifically mention them.

As to Plaintiff's shortness of breath, the ALJ specifically discredited Plaintiff's testimony as to her limitations from this symptom. R. at 490. The ALJ recognized her breathing problems were largely related to degenerative changes in her lungs from sarcoidosis and cited her pulmonary function testing showing moderate airflow obstruction. R. at 490. The ALJ found her testimony as to shortness of breath and related limitations not fully credible, citing medical records showing that her breathing problems were well controlled and only required one use of albuterol per week. R. at 490, 2766. Plaintiff states the ALJ simply summarily dismissed her breathing problems with a citation to one medical

record and comments that her breathing problems lead to her diagnosis of TTP. (Pl's Br., p. 12.) However, as the ALJ recognized, Plaintiff's sarcoidosis and TTP were in remission. Nor does Plaintiff mention the ALJ's use of the pulmonary function testing and Dr. House's opinion to support his finding. Plaintiff also ignores a medical record from October 12, 2012, a few weeks before the hearing, where Plaintiff specifically denied having shortness of breath. R. at 2726. Thus, Plaintiff's argument as to her shortness of breath is merely a challenge to the ALJ's weighing of the evidence, a task beyond the purview of this Court. Cornelius, 936 F.2d at 1145. The ALJ gave multiple reasons, supported by the record, for discrediting the severity of this subjective symptom, and this determination is supported by substantial evidence.

In sum, the ALJ's opinion demonstrates that Plaintiff's headaches and fatigue were intermittent impairments related to her TTP, which the ALJ amply addressed. To the extent Plaintiff complains the ALJ did not address ongoing limitations from these symptoms, Plaintiff did not allege any at the hearing. As to Plaintiff's shortness of breath, the ALJ explicitly addressed this impairment and discredited it, giving multiple reasons supported by the record. Though Plaintiff may disagree with the ALJ's credibility determination, credibility determinations remain firmly within the province of the ALJ, a factfinder who was able to observe Plaintiff and directly question her. See Ryan, 762 F.2d at 942

Plaintiff also argues the ALJ erred in not including these impairments in a hypothetical to the VE. The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing

court must determine whether they are supported by substantial evidence.  McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.").  However, a hypothetical question need not incorporate alleged impairments  the ALJ has properly discredited or found to be unsupported by the medical evidence.  Crawford v. Comm'r of Social Sec., 363 F.3d 1155, 1161 (11th Cir. 2004) ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

As discussed above, the ALJ adequately addressed Plaintiff's alleged impairments of headaches, fatigue, and shortness of breath.  Because the ALJ adequately addressed these impairments and discredited them, he was not required to specifically include them in his hypothetical to the VE.

### D.  The ALJ Did Not Ignore Contrary Evidence.

In Plaintiff's fourth ground of error, she once again brings up a bevy of alleged impairments found in isolated sections of the medical record but making no appearance in Plaintiff's testimony or her disability application.  (Pl.'s Br., p. 13.)  Plaintiff argues the ALJ ignored evidence related to her left shoulder condition, osteopenia and osteoporosis of the hip and spine, depression, side effects of Singulair, breathing, and pulmonary hypertension.  (Id. at 13-14.)

The overall burden of demonstrating the existence of a disability indisputably rests with the claimant. Doughty v. Apfel, 245 F.3d 1274, 1280 (11th Cir. 2001). An "administrative law judge is under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" Street v. Barnhart, 133 F. App'x at 627. In addition, as Plaintiff was represented at the administrative hearing, there was no special duty by the ALJ to scrupulously probe into all of the relevant facts. See Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995).

Plaintiff's osteopenia and osteoporosis never make an appearance at Plaintiff's hearing or her disability application, and thus, unsurprisingly, never make an appearance in the ALJ's decision. R. at 500-525, 483-492. There was no testimony given as to any functional limitations caused by these conditions nor does any appearance of such functional limitations appear in the medical record cited by Plaintiff. R. at 2870. The evidence cited by Plaintiff simply shows decreased bone density for Plaintiff's hip and spine, and a Physician's Assistant has circled osteopenia and osteoporosis, indicating this is the overall density of Plaintiff's bones. R. at 2870.

Plaintiff's allegations of depression make a similar isolated appearance in a note from March 15, 2012 which simply remarks depression next to psychiatric in review of her systems. R. at 2871. Plaintiff also points out a medical record showing symptoms of depression as a side effect of Neurontin, a medication she stopped taking. R. at 2080. The ALJ properly omitted explicit references to these conditions given the minimal evidence in support of them, and Plaintiff's failure to allege them as a basis for disability.

Plaintiff's claim as to side effects from Singulair is also an utterly meritless argument. Consistent with Plaintiff's burden to prove her disability, Plaintiff must put forth some evidence she is taking medication that causes side effects for the ALJ to make findings concerning its effect. Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992). Plaintiff put forth no such evidence, and it does not appear she was even taking Singulair at the time of the hearing. R. at 2871. Thus, there was no error in the ALJ's omission of findings concerning the effects of Singulair.

Additionally, Plaintiff claims the ALJ erred in omitting a reference to a medical evaluation of Plaintiff on March 15, 2012. (Pl.'s Br., p. 14.) The ALJ specifically referenced the record Plaintiff complains he omitted, noting that it was among many for treatment of a variety of short-term acute ailments. R. at 488. Indeed, the record Plaintiff references involves a medical examination for pulmonary hypertension which Plaintiff ultimately did not have. R. at 2839, 2871. Plaintiff contends the ALJ ignored this record and the symptoms described therein, such as bloody streaks in her mucus, various manifestations of shortness of breath and chest pain. The Court has already addressed Plaintiff's complaints of chest pain and shortness of breath, and substantial evidence supports the ALJ's consideration of these symptoms. Further, this record supports the ALJ's credibility finding as it notes that her shortness of breath was "occasionally better" when treated with an inhaler. R. at 2871. Additionally, the ALJ was correct in his assessment that her hemoptysis was a short-term ailment where a follow up visit a month later revealed no such symptoms. R. at

2839. Accordingly, Plaintiff's argument as to the evaluation on March 15, 2012 is without merit.

Plaintiff also alleges that ALJ erred in discussing Plaintiff's left shoulder pain because he stated there was no evidence of Plaintiff receiving any treatment for this condition after November 2008. (Pl.'s Br., p. 13.) In attempting to discredit this statement, Plaintiff points to a record from April 16, 2010 where Plaintiff complained of *right* anterior shoulder pain. Because this record is irrelevant to the ALJ's analysis of Plaintiff's left shoulder pain, the ALJ did not err in his statement regarding her treatment records. Further, the ALJ adequately discredited Plaintiff's complaints of left shoulder pain by discussing her lack of treatment and Dr. House's unremarkable physical examination.

In sum, the ALJ considered all of Plaintiff's impairments and medical records when making his determination. To the extent he did not explicitly reference certain impairments, Plaintiff failed to allege these impairments as a basis for disability, and the ALJ did not err in failing to explicitly reference them. Further, the record shows the ALJ either adequately discredited the impairments alleged to be ignored by Plaintiff or there was such minimal evidence as to their effect upon Plaintiff that the ALJ did not err in explicitly referencing them.

### E. The ALJ Correctly Determined Plaintiff Was Not Disabled for a Closed Twelve-Month Period.

Plaintiff argues the ALJ erred in finding Plaintiff was not disabled for a closed twelve-month period from August 2008 until July 2011. (Pl.'s Br., p. 20.) Without citing any case law or regulations, Plaintiff simply recites her medical records and asserts it would

have been unlikely she could have sustained competitive employment during this almost three-year period due to TTP relapses.  (Id. at 15-20.

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a).  The Supreme Court has upheld the Commissioner's determination that this continuous twelve-month period requirement not only applies to the impairment but also the claimant's inability to work.  Barnhart v. Walton, 535 U.S. 212, 222 (2002).

In making her argument, Plaintiff ignores the holding in Barnhart that the inability to perform substantial gainful activity must last a continuous twelve months.  The ALJ considered Plaintiff's argument and found as follows:

> In regards to her TTP, the record shows that the claimant had periodic exacerbations between when she was first diagnosed in May 2008 and July 2010.  However, the claimant was asymptomatic for many months during the periods between relapses. (Exhibits 1lF; 12F; 13F; 14F; 15F; 16F; 17F; 18F; 19F; 20F; 21F; 22F; 23F; 24F; 25F; 26F; 27F).  Furthermore, since her July 2010 relapse, this condition has been in a sustained clinical and hematological remission (Exhibit 33F/3).  Hence, though there were periods of time during which this condition may have precluded the claimant from working, when she [was] receiving daily plasmapheresis treatments, even when these periods are added together, they do not equal a year.  During the times that the claimant was not receiving plasmapheresis, she was largely asymptomatic, and during these periods, her TTP would have provided little impediment to work.

R. at 490.  The ALJ was correct in his finding that the period of time Plaintiff was hospitalized due to TTP and was receiving plasmapheresis treatments did not equal a year.

In fact, this disjointed period of time adds up to approximately eleven months. <u>See</u> R. at 488-489. Thus, Plaintiff's argument that she was disabled over a *continuous* twelve-month period labors under some difficulty. Further, the record supports the ALJ's assertion that she was largely asymptomatic for months at a time between hospitalizations and treatment, and Plaintiff presents little evidence to rebut this finding. Thus, although Plaintiff may have been unable to work for many months at a time over a two-year period, these periods were neither continuous nor did they add up to twelve months. Accordingly, Plaintiff's argument against the ALJ's finding that Plaintiff was not impaired for a continuous twelve-month period is meritless.

### F.    The ALJ Committed no Error by Including a Postural Limitation of Frequently Balancing.

Plaintiff argues, in her sixth ground of error, that the ALJ erred in finding an RFC that included a postural limitation allowing frequent balancing. (Pl.'s Br., p. 20.) Plaintiff argues this was in error because state agency physician Dr. Abraham Oyeho provided a postural limitation for occasional balancing, and the ALJ failed to discredit this limitation. (<u>Id.</u>) Plaintiff's argument misconstrues the record. The opinion of Dr. Oyeho cited by Plaintiff provides a postural limitation for frequent balancing, the same limitation included in the ALJ's formulated RFC. R. at 976. Plaintiff has misapprehended Dr. Oyeho's limitation of only occasional climbing of ladders, ropes, and scaffolds as one applying to balancing. <u>See</u> R. at 976. Because the ALJ limited Plaintiff to never climbing ladders, ropes, and scaffolds and to frequent balancing, there is no error in the ALJ's use of Dr. Oyeho's opinion.

**G. The ALJ Supported His RFC and Use of the State Agency Physicians' Opinions with Substantial Evidence.**

In her final ground of error, Plaintiff argues the ALJ erred in discrediting the state agency physician's RFC limiting Plaintiff to light work and crediting instead the evaluation by Dr. House. (Pl.'s Br., p. 22-23.) Further, Plaintiff argues that because the ALJ's RFC is not supported by a medical expert opinion, it is not supported by substantial evidence. (Id.)

The Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 404.1527(c)(1)-(2), (5). Social Security Ruling ("SSR") 96-6p provides that findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a non-examining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). However, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. § 404.1527(d).

Here, the opinion shows that the ALJ credited the opinion of Dr. House, an examining physician, over the opinions of the state agency physicians, Dr. Oyewo and Dr. Minnis. R. at 490. This was in accordance with the regulations that generally require giving more weight to

examining physicians. See 20 C.F.R. § 404.1527(c)(1)-(2), (5). Further, the state agency physicians did not take into account Plaintiff's sustained hematological remission of TTP, and the ALJ adequately discredited their opinions to the extent that they were inconsistent with the formulated RFC.

The argument as to the ALJ's formulated RFC also fails because as discussed *supra* § III.A, an ALJ is not required to directly support an RFC determination with a physical capacities evaluation from a physician because an RFC determination is not a medical assessment, but rather a judgment reserved to the Commissioner under the regulations. See 20 C.F.R. § 404.127(d)(2). Further, doing so would give a physician's opinion controlling weight and appropriate from the Commissioner a controlling element in the decision on disability. See Langley v. Astrue, 777 F. Supp. 2d 1250, 1258 (N.D. Ala. 2011). Much like treating physicians' opinions, RFC determinations given by medical consultants should be a tool utilized by the Commissioner but not a vise. Thus, the ALJ was not required to have such an evaluation or an RFC from a medical expert before reaching a determination at step four of the sequential evaluation process. Here, the ALJ gave adequate reasons, supported by substantial evidence, for finding that Plaintiff was not as limited as she claimed, and thus the RFC is supported by substantial evidence.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a

final judgment be **ENTERED** in favor of the Commissioner.

      SO REPORTED and RECOMMENDED this 9th day of February, 2016, at Augusta,

Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA